UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

D-6 MARY SMELTER-BOLTON,

        Defendant.

_____/

Case No. 23-cr-20062

HON. MARK A. GOLDSMITH

## OPINION & ORDER DENYING DEFENDANT MARY SMELTER-BOLTON'S MOTION FOR JUDGMENT OF ACQUITTAL (Dkt. 239)

This matter is before the Court on Defendant Mary Smelter-Bolton's motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 (Dkt. 239).[1] For the reasons set forth below, the Court denies the motion.

### I. BACKGROUND

The Government charged Smelter-Bolton and six other Defendants with several separate but related healthcare fraud offenses. The two counts against Smelter-Bolton were: (i) conspiracy to defraud the United States and to pay and receive health care kickbacks in violation of 18 U.S.C. § 371 (Count 8), and (ii) receipt of kickbacks in connection with a federal healthcare program in violation of the Anti-Kickback Statute (AKS), 42 U.S.C. §§ 1320a-7b(b)(1)(A)–(B) (Count 11).[2]

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. L.R. 7.1(f)(2). In addition to Smelter-Bolton's motion, the briefing includes the Government's response (Dkt. 248), Smelter-Bolton's reply (Dkt. 253), the Government's sur-reply (Dkt. 291), and the Government's notice of supplemental authority (Dkt. 294).

[2] Five Defendants pled guilty; a sixth Defendant, Ibrahim Sammour, had his trial severed.

Indictment ¶¶ 45–53; 56–57.  A jury found Smelter-Bolton guilty of both counts against her.  Jury Verdict Form (Dkt. 242).

The case against Smelter-Bolton had its roots in her work for a non-profit organization, Detroit Area Agency for Aging (DAAA), which assisted elderly and disabled Medicare beneficiaries in Detroit, Michigan.  Trial Tr. Vol. II at PageID.2192 (Dkt. 284).  DAAA providers, such as Smelter-Bolton, cleaned, cooked, grocery shopped, and provided other living support and chore tasks for DAAA clients.  Id. at PageID.2194.

One of Smelter-Bolton's co-defendants, Walid Jamil, owned or controlled several home healthcare agencies (HHAs), including Community First Homecare LLC and Reflex Home Care, LLC.  Trial Tr. Vol. IB at PageID.2063 (Dkt. 283).  It was Smelter-Bolton's relationship with the HHAs that formed the basis for the case against her.

Smelter-Bolton provided Medicare beneficiary information, largely obtained from her work for DAAA, to Jamil's HHAs.  Id. at PageID.2004–2005, 2058; see also Trial Tr. Vol. II at PageID.2214–2215, 2220–2229.  Those HHAs then billed services to Medicare for the beneficiaries Smelter-Bolton (and others) referred.  Id. at PageID.2000–2001.  Smelter-Bolton, or her company, Heart 2 Heart Home Aide Services, LLC, received a payment of approximately $500 for every Medicare beneficiary whom she referred to Jamil's HHAs.  Trial Tr. Vol. IB at PageID.2001, 2059; see also, Trial Tr. Vol. II at PageID.2172, 2199, 2201.

From about May 16, 2016 until April 9, 2019, Smelter-Bolton received approximately 178 payments for these referrals, totaling around $200,000.  Trial Tr. Vol. IB at PageID.2033; Trial Tr. Vol. II at PageID.2269; see also, GX 1.  Rather than deposit the checks from the HHAs into her own personal bank account or Heart 2 Heart's bank account, which would have made them more

easily traceable to her, Smelter-Bolton endorsed and cashed the checks at a business called Eight Mile Party Shop. See GX 011.004-5, ln. 160–176; see also Trial Tr. Vol. I at PageID.2029–2030.

For the reasons explained below, the Court finds that there was sufficient evidence at trial to support a guilty verdict as to both counts and, therefore, denies Smelter-Bolton's motion.

## II. ANALYSIS

Federal Rule of Criminal Procedure 29 authorizes a court to enter an order of acquittal – whether a jury has returned a guilty verdict or failed to return a verdict – where the evidence is insufficient to support a conviction. Fed. R. Crim. P. 29(c)(2), (a). "Claims of insufficient evidence are determined by inquiring whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier could have found the essential elements of the crime beyond a reasonable doubt." United States v. Coleman, 458 F.3d 453, 456 (6th Cir. 2006) (punctuation modified).

"In examining claims of insufficient evidence, this court does not weigh the evidence presented, consider the credibility of witnesses, or substitute its judgment for that of the jury." United States v. Driver, 535 F.3d 424, 429 (6th Cir. 2008) (punctuation modified). Defendants asserting insufficiency of the evidence arguments have a heavy burden, and circumstantial evidence alone can sustain a conviction. United States v. Wettstain, 618 F.3d 577, 583 (6th Cir. 2010).

Smelter-Bolton makes four arguments under Rule 29: (i) there was insufficient evidence that her conduct constituted a "referral" under the AKS. Mot. at PageID.1565; (ii) there was insufficient evidence that she acted "willfully" under the AKS. Id. at PageID.1561; (iii) the "referral" element of the AKS violates "the void-for-vagueness doctrine, the rule of lenity, Due Process," and "the separation of powers doctrine." Id. at PageID.1558 (punctuation modified);

3

(iv) the AKS violates her rights under the First Amendment. Id. All of Smelter-Bolton's arguments lack merit.

### A. "Referral" Under the AKS

Smelter-Bolton argues that the Government failed to present sufficient evidence to prove that she made a "referral" under the AKS.[3] Mot. at PageID.1565. Her argument lacks merit.

The term "referral" is not a technical one, and "standard dictionary definitions suffice to give Defendants notice of the conduct prohibited by the AKS." United States v. Khalil, No. 20-20200, 2024 WL 3160312, at *7–8 (E.D. Mich. June 25, 2024). One such source is Black's Law Dictionary, which defines "refer" as follows: "To send or direct (someone) for purposes of information, treatment, or help to refer a patient to a specialist physician[.]" Black's Law Dictionary (12th ed. 2024). That straight-forward dictionary definition has been accepted in applying the AKS. See GF Indus. of Missouri, LLC v. Lehigh Valley Genomics, LLC, No. CV 22-227, 2024 WL 1889797, at *15 (E.D. Pa. Apr. 30, 2024).

Under that standard definition, there was sufficient evidence for the jury to find that Smelter-Bolton engaged in illegal "referral" activities under the AKS. For example, Jamil's HHA

---

[3] The AKS states, in applicable part:
(b) Illegal remunerations
(1) Whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind--
   (A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or
   (B) in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program,
shall be guilty of a felony and upon conviction thereof, shall be fined not more than $100,000 or imprisoned for not more than 10 years, or both.
42 U.S.C. § 1320a-7b(b)(1)(A)-(B).

4

employee Amanda Shammas's testimony confirmed that Smelter-Bolton "would send patients to us that we would in turn pay her for." Trial Tr. Vol. IB at PageID.2022. Consistent with that characterization, Shammas tracked Smelter-Bolton's referrals in a "referral spreadsheet." Trial Tr. Vol. IB at PageID.2033–2036; GX701. She also confirmed that Smelter-Bolton was paid when she made "patient referrals." Trial Tr. Vol. IB at PageID.2004–2005, 2008, 2022–2023. Indeed, Smelter-Bolton herself characterized her work for Community First as making "referrals." Trial Tr. Vol. III at PageID.2035–2361, 2386, 2388. And Community First thought so, as well. One of Jamil's HHA employees, John Shammas, testified that Reflex paid Smelter-Bolton $500 on April 5, 2019 for "[r]eferring one patient to Reflex that week." Trial Tr. Vol. II at PageID.2175. This is sufficient evidence to support the jury's conviction.

Smelter-Bolton appears to argue that to prove a "referral" by a layperson, the Government must show that the layperson was the "relevant decisionmaker," had authority over those who provide the medical service, or exercised "undue influence" over the formal decisionmaker. Mot. at PageID.1565–1566. To be sure, courts have utilized these factors in analyzing whether a particular defendant in a specific context was culpable under the AKS. But these factors were utilized in contexts far removed from that of the present case.

For example, these concepts were discussed in a case finding no AKS culpability for paying or receiving remuneration for bona fide advertising or marketing. In United States v Miles, 360 F.3d 472 (5th Cir. 2004), the court reversed AKS convictions of defendants paid by a public relations firm to distribute information regarding a client's home health services to doctors, reasoning that the defendants did not engage in any referrals – only advertising activities. Id. at 480. The court found that the defendants' public relations firm had no authority to act on behalf of the physicians and were not the relevant decisionmakers. By contrast, Smelter-Bolton's actions

5

amounted to referrals and cannot reasonably be described as "advertising." Unlike the defendants in Miles who sent promotional materials to numerous doctors who then selected a home health service for their patients, Smelter-Bolton did not advertise the availability of potential home health care services to her patients. Instead, she directed her patients to a collection of home health care services, all owned by coconspirator Jamil, supplying their confidential information to Jamil's operatives.

Undue influence may also be an appropriate factor where the payee does not make the referral, but instead improperly influences the individual who actually does make the referral. See, e.g., United States v Shoemaker, 746 F.3d 614 (5th Cir. 2014) (upholding AKS conviction of defendant, who was paid by nurse staffing company to exploit his personal access to the hospital official who would select which nurse staffing services company would be retained). That line of cases has no application here because Smelter-Bolton actually made the referrals by directing her patients to the Jamil network.[4]

The Court, therefore, rejects Smelter-Bolton's argument that there was insufficient evidence for the jury to convict her of making a "referral" under the AKS.

---

[4] Smelter-Bolton also relies on United States v. Marchetti, 96 F. 4th 818, 826 (5th Cir. 2024), which actually undermines her position. There, the court upheld the AKS conviction of a defendant who was paid by a lab for securing referrals from medical providers for lab work by making recommendations that were never overruled by physicians. The case stands for the proposition that a defendant who effectively controls the referral process may be culpable under the AKS, even if he does not have formal referring authority. If anything, Marchetti supports imposing AKS culpability here, where Smelter-Bolton played a more featured role in steering patients to the Jamil's network.

## B. "Willful" Under the AKS

Smelter-Bolton also argues that she could not have acted "willfully" because, as a layperson, she did not know what the AKS prohibits.[5] Mot. at PageID.1562–1563.

Although the term "willfully" is not defined in the statute, the meaning of the term is still clear. "Willful" under the AKS means only that "a defendant knew that [s]he was receiving kickbacks unlawfully." United States v. Trumbo, 849 F. App'x 147, 150 (6th Cir. 2021) (punctuation modified). Significantly, the statute states that "a person need not have actual knowledge of this section or specific intent to commit a violation of this section." 42 U.S.C. § 1320a-7b(h). In other words, the AKS does not require that a person know all the particulars of the statute to act "willfully." The Fifth Circuit has explained the meaning of "willful" in the context of the AKS and conspiracy charges, where it stated, "the general understanding of the term applies[.]" United States v. Nora, 988 F.3d 823 (5th Cir. 2021) (collecting cases).

Here, the Government set forth sufficient evidence for the jury to convict Smelter-Bolton of acting "willfully" under the AKS. Among other evidence, on June 7, 2019, Smelter-Bolton attended a training as part of her role as a DAAA provider. That training included a slide presentation covering the AKS. One of the slides specifically stated: "The Anti-Kickback Statute prohibits knowingly and willfully offering, paying, soliciting, or receiving any renumeration in exchange for referrals of Federal health care program business." Trial Tr. Vol. II at PageID.2233–2235; GX412.0031.

---

[5] The two cases that Smelter-Bolton cited in support of her argument, Cheek v. United States, 498 U.S. 192, 200 (1991) and Ratzalf v. United States, 510 U.S. 135, 146 (1994), involve statutes that require specific intent to violate specific laws. Cheek involved a defendant's conviction under the United States Tax Code. Ratzalf involved a violation of a money laundering statute. Neither case provides any guidance here.

7

Smelter-Bolton cashed 17 checks after the June 7 training.[6] This demonstrates her willfulness to participate in the conspiracy to violate the AKS. Smelter-Bolton's receipt of 178 total checks and her actions taken in referring DAAA patients to Jamil's HHAs are sufficient evidence to support the jury's verdict that she acted "willfully" under the AKS.

Smelter-Bolton also signed a document with DAAA, entitled "Long Term Support Service Agreement," which specifically required her to keep patients' information confidential. See GX408.0009. The contract explained that there were criminal penalties for bribery, informed her of her duty to disclose conflicts of interest, and set forth her agreement to "look solely to DAAA for payment for services rendered to an eligible patient," and that she "shall not bill, charge, collect a deposit from, seek compensation, remuneration, or reimbursement" relating to any services to DAAA patients. See Trial Tr. Vol. II at PageID.2207, GX 408.0009 ¶25; Trial Tr. Vol. II at PageID.2205–2206; GX 408.0008-9 ¶24; Trial Tr. Vol. II at PageID.2213–2214; GX 408.0032; Trial Tr. Vol. II at PageID.2208; GX 408.0010 ¶38. Smelter-Bolton placed her initials next to each paragraph of her contract with DAAA, indicating she understood and agreed to its contents. Id. Smelter-Bolton's actions in disclosing DAAA patients' identification and medical information to Community First, and in referring DAAA patients to Jamil's HHAs demonstrate that she willfully acted in a way that she knew was improper.

The evidence of Smelter-Bolton's efforts to conceal her wrongdoing also supports the jury's verdict in this regard. "Concealment and falsification may reveal a consciousness of guilt and so help to carry the prosecutor's burden." United States v. Sisco, No. 22-5202, 2023 WL 119398, at *3 (6th Cir. Jan. 6, 2023). Aside from cashing her checks at a party store, Smelter-

---

[6] Another damaging fact: one day before receiving the training on June 6, Smelter-Bolton referred a patient to Community First and was paid $500 from Community First the following day.. GX 001.0159.

Bolton cashed over 160 checks "that falsely made it appear she was paid legally per hour instead of illegally per patient." Trial Tr. Vol. II at PageID.2170–2172; 2271–2272; GX 1. The memo line on the HHA referral checks falsely stated a certain number of hours worked to conceal the fact that the check was actually a payment for referrals, rather than hours worked. Id.

Smelter-Bolton's argument that her case is similar to Nora is not persuasive. In Nora, the defendant worked as a new patient processor for a home healthcare company. 988 F.3d at 826. He processed referrals and even processed payments to people who made referrals to the company. Id. While there was "no dispute that [the defendant] worked at [the HHA] while fraud and kickback schemes occurred," the Fifth Circuit found that there was insufficient evidence that the defendant "knew that his work was unlawful." Id.

The court explained that, although the Government presented evidence that the defendant "received training on compliance, Medicare, and home health," there was only an "implication" that this training alerted the defendant to the unlawful nature of the HHA's practices. Id. There was no evidence "about what this training entailed" or whether the training even "discussed health care laws or Medicare regulations at all, let alone regulations about kickbacks[.]" Id. In Nora, there was no testimony or other evidence that anyone, including the defendant's co-workers, had conversations with the defendant about what constituted unlawful activity under the AKS. Nor was there evidence that the defendant understood his employer's practices to be fraudulent.

Here, the evidence demonstrated that Smelter-Bolton received training specifically regarding what the AKS prohibits. Additionally, the Government set forth evidence of Smelter-Bolton's receipt of multiple kickback checks that she cashed after receiving that training. In sum, Nora is not helpful for Smelter-Bolton because Nora presents very different facts from those the Government presented here.

9

The Government presented sufficient evidence to support the jury's finding that Smelter-Bolton violated the AKS and did so willfully. Smelter-Bolton's argument as to sufficiency of the evidence is without merit.

### C. Statutory Vagueness, Rule of Lenity, Separation of Powers, and Due Process

Smelter-Bolton also argues that the Court should grant her motion for acquittal because (i) as applied to the evidence, the AKS's use of the term "referral" is vague and ambiguous, and thus violates Smelter-Bolton's due process rights, Mot. at PageID.1572–1573; (ii) any ambiguity in the statute must be resolved in favor of Smelter-Bolton under the rule of lenity,[7] id. at PageID.1574–1575; (iii) interpreting the ambiguity in the AKS against Smelter-Bolton gives too much authority to the prosecutors and courts, as opposed to the legislature, and violates separation of powers and due process principles, id. at PageID.1573, 1575.

To ascertain a statute's meaning, "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." Gundy v. United States, 588 U.S. 128, 141 (2019) (punctuation modified). Terms that are not defined are "interpreted as taking their ordinary, contemporary, common meaning." Sandifer v. U.S. Steel Corp., 571 U.S. 220, 227 (2014) (punctuation modified). Courts may utilize standard dictionaries to determine the ordinary meaning of words. Vander Boegh v. EnergySolutions, Inc., 772 F.3d 1056, 1060 (6th Cir. 2014).

Smelter-Bolton's argument relies on the premise that the term "referral" is ambiguous. Mot. at PageID.1572–1575. But that premise is flawed, given that the term is defined in its ordinary sense in standard dictionaries. Further, it is untenable to argue that the term is ambiguous when it is a term that Smelter-Bolton herself used, as did people involved in the conspiracy with

---

[7] The rule of lenity "applies only when, after consulting traditional canons of statutory construction, [the Court is] left with an ambiguous statute." Schular v. United States, 589 U.S. 154, 165 (2020).

10

her. There was sufficient evidence that Smelter-Bolton understood what the term meant and made referrals in violation of the AKS. Because there is no ambiguity, there is no need to analyze the statute as a vague law, nor does the rule of lenity come into play. See Schular, 589 U.S. at 165 (finding that, where the text and context of a statute "leave no doubt" as to its meaning, the rule of lenity has no application). Without ambiguity, Smelter-Bolton's arguments that the statute violates separation of powers or due process principles also lack validity.

Several courts have rejected vagueness challenges to the AKS. See Khalil, 2024 WL 3160312, at *8 (citing United States v. Williams, 218 F. Supp. 3d 730, 740 (N.D. Ill. 2016) (collecting cases)). Smelter-Bolton has not identified a single AKS-related case that supports her arguments.

Additionally, even if the word "refer" were ambiguous, the fact that the AKS contains a "knowing" or "willfulness" requirement, discussed at length above, mitigates any vagueness. See Khalil, 2024 WL 3160312, at *7–8. The Supreme Court "has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc., 455 U.S. 489, 499 (1982). As another district court has explained, "[t]his strong scienter requirement overcomes any potential vagueness in the statute because a person who would otherwise be ensnared without notice does not violate the statute." Williams, 218 F. Supp. 3d at 740.

The Court, therefore, rejects these attacks on the AKS.

### D. First Amendment

Lastly, Smelter-Bolton argues that her acts of recommending doctors to patients constitute speech protected by the First Amendment and that the statutory scheme prohibiting referrals

interferes with those rights. Mot. at PageID.1575–1576. Smelter-Bolton argues the Court should apply "heightened" scrutiny and strike the "vague" term "referral" under the AKS as applied to Smelter-Bolton. Id. at PageID.1576–1577. The Court rejects her arguments.

Other courts have considered whether the AKS regulates speech protected by the First Amendment and concluded that it does not. See United States v. Blair, No. ELH-19-00410, 2021 WL 4339132, at *26 (D. Md. Sept. 23, 2021) (citing Hanlester Network v. Shalala, 51 F.3d 1390, 1398 (9th Cir. 1995));  see also, United States v. Regeneron Pharms., Inc., No. 20-11217, 2020 WL 7130004, at *16 (D. Mass. Dec. 4, 2020); United States v. Berkeley HeartLab, No. 14-230, 2017 WL 4803911, at *12 (D.S.C. Oct. 23, 2017); United States ex rel. Nevyas v. Allergan, Inc., No. 09-432, 2015 WL 3429381, at *1 n.1 (E.D. Pa. May 26, 2015); United States v. Mathur, No. 11-cr-00312, 2012 WL 4742833, at *8-11 (D. Nev. Sept. 13, 2012).

Instead, the AKS "regulates the conduct of paying or offering to pay remuneration in return for referrals." Blair, 2021 WL 433912, at *26; see also Khalil, 2024 WL 3160312, at *7–9. Smelter-Bolton has set forth no reasons that would persuade this Court to find otherwise here.

Accordingly, the Court rejects Smelter-Bolton's First Amendment-based arguments.

### III. CONCLUSION

For the above reasons, Smelter-Bolton's motion for judgment of acquittal (Dkt. 239) is denied.

**SO ORDERED.**

Dated: November 12, 2025             s/Mark A. Goldsmith
Detroit, Michigan                          MARK A. GOLDSMITH
                                                         United States District Judge

**CERTIFICATE OF SERVICE**

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 12, 2025.

                                        s/Joseph Heacox
                                        JOSEPH HEACOX
                                        Case Manager